Case number 14-5172, Friends of Animals Appellant v. Dan Ashe, in his official capacity as Director, U.S. Fish and Wildlife Services in Sally Jewell, in her official capacity as Sec of the Interior. Mr. Harris for the Appellant, Ms. Hanson-Young for the Appellees. Good afternoon. May it please the Court, my name is Michael Harris. On behalf of the Appellant, Friends of Animals, I would like to reserve two minutes of rebuttal, if I may. Friends of Animals initiated this case against the Fish and Wildlife Service seeking to obtain determinations under the Endangered Species Act on petitions for 39 different species of animals that were subject to citizen petitions submitted as far back as 2010. The Fish and Wildlife Service has acknowledged that those petitions have merit, they've issued positive 90-day findings on them, but has yet to issue the required 12-month determinations, the final disposition of them, despite the fact, as I said, it's been between three and five years since these petitions were submitted. But the merit questions are not before the Court. Instead, the Court has been asked to resolve two jurisdictional issues. The first is Friends of Animals standing under Article 3 in this case, and the second is the adequacy of our notice requirement. Is the adequacy of the notice jurisdictional? That wasn't jurisdictional. Well, as the District Court suggested, it's not clear. There have been different opinions by different courts on whether it's jurisdictional or not. But courts have generally treated them as jurisdictional in that it ends the litigation, that you cannot simply amend the notice letter. You have to have the case dismissed first and start all over. So I think I agree with the Court. I don't think it's been resolved. Different district courts have treated it differently. I was going to start with the standing question, unless the Court wants me to start with the notice question. Friends of Animals primarily seeks to invoke Article 3, standing here under the theory of informational standing, which has been recognized by the Supreme Court. FEC v. Aikens is often cited, in which the Court said a plaintiff suffers injury in fact when a plaintiff does not receive information which a statute provides a right to such information. Various courts have interpreted that, including the Supreme Court, to state that the test is simply whether in the plaintiff's view a statute requires one to make certain specific information available. In other words, I think the plaintiff needs to make a plausible argument that there's a statutory right to that information. This seems different from information, arguably, in the sense that it's not a FOIA-type statute of getting preexisting information but more of a finding that you're entitled to one way or another by the government. Can you address that? I think there's two aspects to that question. The first is whether the statute itself has to have an informational purpose at its core, like FOIA would, Freedom of Information Act would. I don't think that's the way the courts have looked at it over the time. For instance, in the Supreme Court's case involving the Fair Housing Act, the court didn't say, well, the Fair Housing Act itself isn't about giving information, it's about housing discrimination. It looked at the specific provision that the plaintiffs were provoking, saying, no, that provision provides a statutory right to information. Likewise, in Ethel Corporation v. EPA, which was before the D.C. District Court, that involved the Clean Air Act. No one would argue that the central purpose of the Clean Air Act is to provide information. But it does have a provision, and in fact the court accepted that Ethel Corporation made a showing that a provision within the Clean Air Act required disclosure of specific information regarding emission standards and how the Environmental Protection Agency, what methodologies they use in determining emission standards. Likewise, in American Canoe, the Sixth Circuit was looking at the Clean Water Act. And again, it looked at the specific provision that was provoked by the plaintiff in that case. As for Section 4, it's not just a finding. Findings are supposed to evaluate the best available commercial and scientific data to determine if any of the five listing criteria mandate protection of the species. In addition to the finding, in cases of warranted decisions, the secretary has to issue summaries of the data. And she may even also have to reveal how that data connects to the criteria. If in a situation of a warranted but precluded finding, the secretary has to also provide an evaluation on how she reached that conclusion. So it's more than just, oh, by the way, we found that the species is endangered. It's actually some substantive information about the status of that species, both in the real world and legally. And I think it's important to note that Congress provided for a flow of information during the listing process. Under Section 4, the secretary has an obligation to seek information from the public, from scientists, from advocacy organizations, and utilize that information in her review, and then has an obligation in return to provide that information back so that organizations that are interested in protecting these species will have some basis to move forward after that decision is made, whether it's positive, not positive, or positive but precluded for other reasons. I wonder, Mr. Harris, if you could talk a little bit about the notice-and-wait provision. Excuse me, the notice itself? The notice, the requirement and the ground on which the District Court rules against you. Absolutely. So the District Court took a look at the language in Section 4b3b, which generally reads that within 12 months after receiving a petition that is found under subparagraph A to present substantial information indicating that the petitioned action may be warranted, the secretary shall make one of the following findings. Well, the court really just focused on that presents substantial information and sort of writes away the within 12 months after receiving a petition and sort of suggests that... But isn't the issue here, sorry to interrupt, isn't the issue here, and I realize it's technical, but the 60 days, as the government says, you have to give a 60-day notice of suing regarding the allegedly overdue 12-month finding. Right. But in our view, and I believe it is the view of the Ninth Circuit in Bagley, after 12 months, you're in violation of the 12-month standard, regardless of whether... Just assume that I agree with you on that. Yes. You still have to give 60 days notice of an intent to sue regarding the allegedly... And we did. The District Court doesn't disagree. Our notice letter included... Because we waited for 12 months, and then we sent a notice letter. At the time, 90-day findings had not been issued on all of the species either, so we alleged both violations. By the time we brought the lawsuit, though, they had started curing the 90-day violations, so the complaint only alleged 12-month violations. The notice letter itself did. The District Court's problem with our notice letter was that under his reading... At the time, the 90-day findings hadn't been made. Correct. That's right. That's been cured. Now, so you're saying that you don't need to file a new notice because you've notified and waited way more than 60 days with respect to the 12-month violation, and I guess the contrary position is no, because your claim didn't ripen or arise until the Secretary found under subparagraph there was substantial information, and therefore you need to refile? How do you respond to that? Well, that's what the Court seems to say, that you can't have a 12-month violation until a 90-day positive finding is issued. So the question is, is it right? I guess I think the way Judge Bates put it is this is akin to pre-violation notice, and what's your response to that? There was a violation. Already? I think as soon as the 12-month deadline passed, they were in violation of the requirement for a final determination within 12 months that the petition was submitted. Well, if you're going to be really technical, though, and I realize there's a tension in the law because there is a hard stop 12-month deadline. It's not, to the extent practical. So that supports your position, but the language also says that there's a 12-month obligation with respect to a petition that is found under the prior subparagraph to present. So if it hasn't been found to present substantial information that a species needs to be listed, is there a violation? Well, I think there is. I don't think that language says unless. I think what that language meant to say is the obvious. If at some point you determine that the petition did not have substantial information, then you can cure your violation of the 12-month by making that determination instead. Wait, wait, wait. Run that by me again? So, yes, you are in violation of the 12-month finding. You, the secretary. The secretary, after 12 months. But you can cure that violation after 12 months by either making a 12-month determination or making a negative 90-day determination. That language doesn't say unless. It just states the obvious. Even if you're in violation after 12 months, that doesn't mean you have to make a 12-month finding. You can still cure your violation by issuing a negative 90-day. So what they're saying, I think, is that you have to wait until there's been a 90-day finding to bring a suit challenging the failure to make a 12-month determination, and you need 60 days' notice after the 90-day finding before you file a suit challenging the failure to make the 12-month determination. And I realize that seems a little crazy, but why doesn't the statute require that? Well, the statute's been around since 1982, and it's never required it until this case. No one's really made that argument before. But with that said, I think their interpretation not only nullifies the first part of that sentence, within 12 months of receiving a petition, it completely undermines both the statutory intent of Section 4 and the legislative history. Congress didn't want the Secretary to have that discretion. They didn't want the Secretary to be able to delay. In fact, they wouldn't be able to delay indefinitely. I know your brief raises the concern that there could just be indefinite delay, but the theory would be if you haven't made the 90-day finding in a timely way, you sue to challenge to force the making of the 90-day finding. Once that's made, you then can sue for the failure to have the 12-month determination, but you have to give at least 60 days' notice before you do that. And then the separate question would be, is the 12-month thing a hard stop? And it seems, on its face, it is. I agree. So you'd have a successful suit to challenge the failure to make the 12-month determination, but you have to go through these hoops to get there. But two quick responses to those hoops. They still defeat the purpose of a timely determination because, as the government argues in their brief, they believe the 90-day has a certain amount of discretion. It's not even clear that they believe that they have to make the 90-day within 12 months. Right, and I think they're probably wrong on that, but I agree they're making that argument, yeah. And in addition, invoking the judicial process twice is going to drag that out even further. I agree. And I think that just goes right against the intent of Congress to do that. It does, arguably. You could argue that both ways. But the statute does seem pretty clear on the 60-day notice before you sue to challenge a particular violation. Well, but the Ninth Circuit in Bagley said, no, you are in violation. In fact, the district court quotes something from Bagley having to do with, you know, you can take three, four, five years. But you're not going to be in violation until you know that the 90-day finding is a positive 90-day. But the court rejected that. That quote was from the district court that Bagley overturned. The Ninth Circuit in Bagley said, no, you are in violation of the 12-month requirement at 12 months. And, you know, you can go and cure it, of course, by making the finding later. Or if you haven't made a 90-day, I guess make it a negative 90-day. But it doesn't say that it's not a violation that can't be alleged in a 60-day notice letter. Great. Thank you. Thank you. Good afternoon, Your Honors. My name is Tecla Hanson-Young. I represent the Fish and Wildlife Service. There are two reasons that the court can affirm the dismissal of the complaint in this lawsuit, both of which you've heard about a little bit. I'd like to address the notice provision first. The Friends of Animals has failed to comply with the mandatory 60-day notice requirement in the ESA, not because the service's findings on the petitions were delayed past 12 months after the petitions were filed, because the notice was filed prior to the service having made the positive 90-day finding on the petitions. It is clear in the statute that for there to be a violation of the 12-month finding requirement, the service has to have made a positive 90-day finding on the petition to list the species. Why is that? What purpose does that serve? Because if the service doesn't make a finding that the petition to list the species doesn't include substantial information showing a listing might be warranted, it doesn't need to make a 12-month finding. Right, but if you step back one step and think about the purpose of the statute, I mean, the Secretary has freestanding obligations when, you know, apart from a citizen petition, when there is substantial scientific evidence showing that a species is endangered or threatened, to list a species. So this is just a mechanism for a citizen to come forward, and the question is, so the duty is there, and it's not as if there's no duty on the Secretary unless and until a petition has been filed, and therefore there's always this escape hatch, because if in the real world there's a violation, then there is no escape hatch. That might be so, but that's not the situation presented here, and Friends of Animals hasn't made any kind of allegations along those lines. The situation here is that Friends of Animals petitioned to list the species, and then once Friends of Animals petitioned, the service has 90 days to the maximum where practicable to issue a finding that the petition may include substantial information that a listing might be warranted, and that function of the 90-day finding is to allow the service to weed out petitions that it doesn't need to act on further. So because they don't show a basis in scientific evidence for a listing, but they have raised the notion that the Secretary does have the obligation, because they've come forward and said it can't be disputed in the real world, and in fact the Secretary ultimately agreed in the real world there is evidence that these species are threatened and endangered. So holding out this sort of hypothetical, it's like putting above that reality and that responsibility of the Secretary this non-applicable potential condition, which is maybe there's nothing to it, as an obstacle to the suit going forward. It doesn't really seem to comport with the statutory intent. So that's what I'm looking for, is some sense of why does this statute and its objective work better under your view than under the petitioner's view? Well, Congress required the 60 days of notice to, for strictly, the language is plain, and the Supreme Court has held in Hallstrom that similar notice requirements in other statutes must be construed strictly when there's plain language giving that notice requirement. Right. Well, Hallstrom, though, didn't have the sort of two-wave problem that this case represents of the 90-day, 12-month. And I don't think that Friends of Animals disputes that they do need to give and strictly comply with 60 days, give the notice, and they didn't file suit until after 60 days, after 12 months. So they've complied strictly under Hallstrom in their view. Right. And in the government's view, strict compliance requires notice of an actual violation that has already occurred. In the real world, that's what I'm pointing to. It's like, what is this about? What are the violations we're talking about? Evidence of endangerment and no listing. That's occurred. But it only occurred after Friends of Animals issued the notice. So at the time Friends of Animals issued the notice, there was no obligation. There was no positive 90-day finding. It's possible that the secretary wouldn't have found that the petitions contained substantial information indicating a listing might be warranted. And under Friends of Animals' theory, there's no way of limiting the notice. The notice could have included alleged violations of the services, you know, failure to properly promulgate listing rules. If the violation doesn't have to have occurred when a plaintiff gives notice, that defeats the purpose of the notice provision, which is to allow the agency time to remedy any alleged defects. Right. On the purpose, if we're going to talk about the purpose, the purpose is to give the agency time to fix things before the courts get involved. That's correct. And if there hasn't actually been a violation, as was the case here, then the agency can't actually remedy the defect. But they're worried about the two-step in the real world meaning a lot of delay. That's correct. But there's a remedy for that as well. The remedy for that is what they started to do here, which was to make an unreasonable delay claim on the 90-day findings. They sued on that basis. Right. And then after they sued, the service issued the 90-day findings. So the moment the 90-day finding is made, in this case, if they give notice to the government, then they can sue for the failure to make the 12-month finding within 60 days after that under your theory. That's correct. And that is not a burdensome requirement, as the Supreme Court also found in Hallstrom. The court can look at the equities of requiring this additional process. And where the plaintiff controls the timing of the suit, it's appropriate for the court to hold it to the strict statutory requirements. I thought you were saying that the service controls the timing of the suit because no claim under the 12-month ripens until the 90-day has been fulfilled. So the service 100% controls the timing. No, because the Friends of Animals can bring an unreasonable delay suit challenging the service's delay in making a 90-day finding. Right. So, for example, under Friends of Animals' view of the law, the service has to make a 90-day finding within 12 months. Is that your view of the law, too? That's also your view. We don't believe that issue is presented here, when the 90-day finding is due. But we do not press that argument. We are looking for a scheme that is not going to allow the agency to delay indefinitely. And you're as aware as I am of the multi-year delays that have been. Yes, that's right. But your point is that that should be resolved in an unreasonable delay suit to challenge the 90-day failure. That's correct. And that is because the timing of the 90-day finding isn't at issue here. What's at issue is whether the Friends of Animals' notice was deficient or not. Because at the time the notice was filed, the service hadn't made a 90-day finding. And in that unreasonable delay suit, let's just play this out. They haven't made a 90-day finding. They bring an unreasonable delay suit. If it's past 12 months, presumably the court's going to say unreasonable delay. Right. Make a finding immediately. If you make a negative finding, it goes away. If it's a positive finding, then that triggers the 12-month requirement. But you have to have 60 days' notice before you file suit for the failure to make the 12-month. That's generally correct. How about you said generally. Is there anything I'm missing? In determining whether an immediate injunction would be appropriate, the court would have to look at the track factors and things like that. So that when I say generally, I mean an injunction wouldn't be automatic. I understand, yeah. But under Friends of Animals' view of the law, it would be able to file an unreasonable delay suit after the 90 days. Because as a practical matter, to meet that 12-month finding requirement, the service really needs to make its 90-day finding pretty quickly. And this is, again, under Friends of Animals' view of the law. It takes the service about nine months. At the point at which the service makes a positive 90-day finding, it takes usually at least nine months. But isn't it up to you whether to eat into that time? I mean, personally, isn't it up to the service? Congress has said you have 90 days for Task A and up to 12 months for the two tasks combined. And if you think you can be super fast on it once you've made your threshold determination under the 90-day requirement, fine, but 12 months. And it seems like the implication of your position is, you know, we can take as long as we want under the 90 days, and maybe in that unreasonable delay suit, we're going to stand up and say, no, this is insofar as we can reasonably do it and we're busy. The service's position is not that it can take as long as it wants to make the 90-day finding. That is not the government's position. What is the government's position on what limits are? To the maximum extent practicable. And that language is caverned by in determining whether it's practicable to make a listing, a 90-day finding, the service can only consider things like, are there species who have a higher need for listing? Are there more urgent needs within the listing program that it needs to attend to before making this particular 90-day finding? So there's some caverning there, and there's listing priority guidelines that the service has enacted that it needs to follow to help it prioritize. But one important point here, too, is that the service – I thought that was what the warranted but precluded category was for, and that counts as fulfilling the 90-day. No? The warranted but precluded finding is the 12-month finding. Okay, right, right, right. So the 90-day finding is the service's initial finding that a petition presents substantial information indicating a listing might be warranted. The 12-month finding is the subsequent finding, which makes a decision on the listing petition that listing is either warranted, not warranted, or warranted but precluded. So my understanding of the difference between your position and their position is a maximum of 60 days difference in this sense. And tell me if I'm wrong, which is, under their theory, they can challenge the 12-month finding without giving the 60 days separate notice. Under your theory, they can challenge the failure to give a 12-month finding so long as they've given the 60 days notice. And the delta between their position and your position is only 60 days. Is that wrong? I'm not sure I would agree with that. I think the main difference between the government's position and Friends of Animals' position is that the notice of a violation has to identify a violation that has occurred. So I think if this is correct, 60 days and a new notice is the delta. So 12 months comes. Well, you haven't really conceded that 12 months is the outside for the 90-day filing. But let's say 12 months comes up and we follow badly, and say at least that's a deadline on your 90-day finding. Your view is if Friends of Animals has filed a petition on the 366th day, saying you're too late, that they get thrown out of the court and have to file a new notice and wait another 60 days, and then they're challenged with the 12-month finding. No. There needs to be a positive 90-day finding. Exactly. So they have to bring one suit. That has to go through the court. That has to be enforced. Then if they win that, they have to take that and turn around and go back to court with another 60-day notice and challenge the failure to meet the 12-month. That's correct. But that's, under even their theory of the case, I assume there's not going to be an injunction forcing a 12-month determination if there hasn't been a 90-day determination. That's correct. That's why I'm saying the Deltas, the 60 days, because under either theory, as I understand it, there's going to have to be a 90-day finding first. Yes, that's right. Yes. And I would point out that even in the Badgley District Court decision, the district court didn't order the service to make 12-month findings on petitions that it hadn't made positive 90-day findings on yet. Right. Because the service is never under an obligation to make a 12-month finding until it makes a positive 90-day finding. But an injunction couldn't say you have to make your 90-day findings within the next 30 days? The district court did order the service to make 90-day findings. So that would be appropriate if there was a violation. But it didn't order the service to make 12-month findings when there had been no 90-day finding in the first instance. Once there's a 90-day finding, they say we can immediately be in court forcing the 12-month determination, and you say you can get into court 60 days from now to force the 12-month determination. Yes, that's correct. After you give notice. Right. That's exactly right. Okay. If the court has no other questions on the notice issue, I'd like to briefly talk about standing. Let me just one question that came up, whether this failure to comply with notice and delay provision is jurisdictional, and do you have a position on that? The government's position is that it is jurisdictional. The court does not because it speaks to a court's ability to hear the claim. But this circuit hasn't addressed the question of whether it's jurisdictional or not, and the court doesn't need to reach it here because the issue has been preserved. And our position is that irrespective of whether it's jurisdictional or not, this court needs to strictly construe the language. And we could rule on it without addressing standing. That's correct. Because it's another non-merits threshold ground. That's correct. I'd like to briefly talk about standing. Okay. Friends of Animals relies on 1540G, which is the citizen supervision of the ESA, and 1533B's publication requirement to assert it has informational standing. But the Supreme Court in Lujan has held that 1540G, the citizen supervision, does not confer standing. It only confers a right to bring a lawsuit. The plaintiff has to show separate Article III standing from a separate concrete injury that results from the alleged violation. 1533B. What about the informational standing argument? To try to show informational standing, Friends of Animals relies on 1533B3's publication requirement, and all the statute says is that the service has to promptly publish its findings in the Federal Register. A requirement to promptly publish findings in the Federal Register cannot give rise to an informational right, the violation of which by itself creates Article III injury sufficient to support standing. Because everyone would have standing. Exactly. Every time. That's exactly right. And no court has ever gone so far to hold that kind of statutory language creates such a right. When you look at the – and also this ties into the purpose of the Endangered Species Act and that publication requirement. The purpose of the publication requirement is not to provide information to the public in and of itself. For example, FOIA and the Advisory Committee Act, the Election Campaign Act, and the Supreme Court cases all serve a sunshine in government kind of a function. They are meant to create access to information that's helpful in and of itself for the public. And even Havens, the Fair Housing Act, that language in the statute prohibited the provision of false information about the availability of housing on the basis of race. So the informational component there was directly linked to prohibiting discrimination in housing. It wasn't just a requirement to publish a decision in the Federal Register. And the purpose of those informational provisions in those statutes, again, is unlike the ESA here, which is meant to get information from the public to the agency so that the agency can make decisions based on the best available science. And it's important to note for the ESA that the ESA doesn't require the service to gather or make studies, make its own science, do its own studies on whether a species is endangered. The only thing that the ESA requires is for the service to consider the best available information that's out there. Friends of Animals purports to have that information because it says it submitted the best available science in its petition to list the species in the first place. But there's also, I mean, the informational, and I'm not sure that they've presented this, but they do in their complaints say that they have members who want to, you know, enjoy these species. And if, for example, if you were an organization that was devoted to complementing the role of the government in preserving animal habitat, and you wanted to know, like, which are the crucially at-risk species, and where is the government's regulatory protection going to be effective, and where is it not? They could look at the science and say, well, you're dealing with the, you listed the bats and the beetles and the tarantulas, but you haven't listed this squirrel. So to the extent that we have programmatic interests we're going to focus on the squirrel, that seems like that's very analogous to the kind of informational-based interests that we in the Supreme Court have recognized in other cases. Why is that not enough to give standing to Friends of Animals here? First of all, Friends of Animals hasn't made any kinds of allegations like that in its declarations. It hasn't said, I have a member, it hasn't submitted a declaration from a member saying, I recreate in this habitat where these tarantula are located. I like photographing them. And claims about that in the complaint are not enough? Not at the stage where standing has been contested and Friends of Animals has then subsequently submitted declarations. And I would also say even the allegations in the complaint, they say we have some members who enjoy this habitat, enjoy these species, but they don't give any additional information aside from that one sentence. So I'm not even sure that that would be enough if we were just looking at their complaint. But in the hypothetical you pose, I'm not sure that, I hesitate to speculate whether an organization or even whether Friends of Animals could show an informational-type harm arising from the ESA if it had pledged something different. But the bottom line here is that Friends of Animals, the kinds of harms it's asserting, make clear that it is really seeking to enforce the service's 12-month finding. It just wants the service to make the finding. It's not looking for information that the service might produce about where it's focusing its resources or where it thinks. Why isn't that also information of practical moment to the organization? A lot of what they're doing is bringing these petitions before the service, and presumably as a 501c3 they're doing fundraising. And they need to be able to say to their supporters, look at what we're doing. This is a worthy activity. Or maybe they need to be able to refocus because their supporters after all these years are going to start to say, that's not a worthy activity. You are barking up the wrong tree. So even there it seems like maybe that's a concrete effect on them of precisely the information that they as petitioners need from you. How are our petitions doing? And it really limits the class of people from just general information and science to what are you doing with our petitions? Again, Friends of Animals hasn't made those kinds of declarations of harm, first of all. And second of all, they have. I mean, they're talking about their checking. They want to see. They need to know. As to the checking, the only kind of checking that they've alleged is the checking the Federal Register. And they haven't alleged how much time they spend on that, how much it costs. And, in fact, you can set up an automatic notice in the Federal Register to send you information. And they also say that it's part of their daily duties. So they don't say, as this Court has held and as the Supreme Court has held for an organization to show standing, it has to allege that its discrete programmatic interests have been injured. And it has to say in response to the government's inaction, it's inverted resources. Now, I see that the resources of the actual checking are not – it doesn't seem to be – it is something they basically claim that they do anyway in their declarations. Right. We're going to do that no matter what. I'm saying that, actually, it has a material impact on them beyond the outlay of time to click the button, in that it's a reflection for them on how they're performing as an organization. And that, in turn, affects their supporters' interests. The only thing that they've alleged here along those lines is their potential fundraising impact. Yes, and that's a big one. But this Court has held that fundraising impacts are too speculative to support standing, and that's a National Taxpayers Union decision. And in that case, they had actually submitted a declaration from a donor saying, I'm not going to donate any money. And this Court still found that was too speculative to support harm. So we only have two kinds of harm, the alleged resource impacts that Friends of Animals has made, the fundraising impacts and checking the Federal Register. And those are not enough. And this Court, and going back to your hypothetical, I'm not aware of any precedent of this Court or the Supreme Court that has held that the kinds of allegations that you've identified here would be enough to support standing. Because there's no, even, for example, in this Court's recent PETA decision, which Judge Henderson authored, the PETA declarations were so much more detailed than the declarations submitted here. And PETA had said, we spent $10,000 of staff attorney time, and it talked about the 10 investigations that it had to undergo on its own to compensate for the Department of Agriculture's failure to act on its investigation requests. And also, I would note another difference between this case and the PETA case, is that the PETA case didn't address informational standing. It addressed organizational standing. And I think there's a difference between saying, which is what Friends of Animals has said here, that the provision at issue creates a right to information, the violation or the deprivation of which alone, without alleging any more, is enough to support standing. Which, basically, Friends of Animals is saying the ESA is like FOIA. Right, they are saying that. Right. And I understand your argument for why it's not. So you're over time, so why don't we hear. Yes, I apologize for that. That's okay. Thank you so much. Thank you for your argument. We'll hear for rebuttal from appellants. Let me just start by saying we don't think the ESA is like FOIA. I think what we're saying is we're not alleging organizational standing. We're not alleging standing of our members under Lujan. We're alleging informational standing. And in Akins, and I really think the American Canoe Decision in the Sixth Circuit explains it, it is a little bit different of a standard. Congress has provided the injury. It is a concrete injury if information is withheld. What we need to show, what the addition that we need to show, is that we have some unique interest, something that's different from the injury you may have suffered from the withholding of this information, that is different and makes it more particularized to us. On the 60-day issue, can I ask? Yes. My understanding of the difference in the two positions, and correct me if I'm wrong, is once a positive 90-day finding has been made, you believe you can be in court immediately to challenge the failure to make the 12-month determination so long as you've given a prior notice that challenged both, whereas they would say you have to wait 60 days to challenge the failure to make the 12-month determination. I think that's right. I mean, we think that if they have, whether they've issued a 90-day finding or not, at 12 months Congress intended to have them issue a determination. But it seems, right, and if they haven't even made the 90-day finding and you go into court and we're after 12 months, I think you're going to have a successful unreasonable delay suit that will force the 90-day finding. Then once the 90-day finding is made, your position would be we can immediately also argue about the failure to make the 12-month determination. They would say no, you have to give notice and wait 60 days before arguing in court about the 12-month determination. I think that might read a little bit too much into the relief we would be seeking. I think that talking about what the Ninth Circuit in the Bagley case, ordering only for the 90 days and not the 12 months, I think after 12 months in a situation like we have here, that what the court needs to order them is to comply with Section 4B3B, which, as I said earlier, or cure the defect by making a negative 90-day finding. It's overdue, and both are overdue. You can do either. You're not now bound. And they would say you're right to the extent, they don't quite say this, but I think they would ultimately say you're right to the extent you can force the 90-day finding to be made, but then we get at least another 60 days to make the 12-month determination, at least before you can complain about it in court. That's what they would say. And you would say no, it needs to be immediate. Congress defines the violation. Right, and so that's why I was referring to a 60-day delta. Correct. The only thing I'd say, lastly, is I just want to talk about Hallstrom real quickly. Hallstrom was a Clean Water Act case. It involved very detailed and technical violations for which clarity was necessary in the notice requirement. It did not involve mandatory deadlines for which the government knows those mandatory deadlines. They've known them since 1982. They're trying to recraft the statute here in order to give them relief from what Congress did not intend them to have, and that's discretion on the end resolution of a petition at 12 months. And it would only incentivize them to wait 12 months to make every 90-day finding from here on out if the court was to buy their argument. So thank you very much. Okay, thank you. The case is submitted. Well presented on both sides. Thank you.
case_name_full: Friends of Animals v. Dan Ashe, In his official capacity as Director U.S. Fish & Wildlife Services and Sally Jewell, In her official capacity as Sec. of the Interior
judges: Judges Henderson, Kavanaugh, Pillard